**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

KEITH J. CANFIELD,                          :
                                            :
    Petitioner                          :
                                            :        CIVIL NO. 3:CV-09-1053
  v.                                        :
                                            :        (Judge Caputo)
MICHAEL KLOPOTOSKI, *et al.*,               :
                                            :
    Respondents                         :

**M E M O R A N D U M**

**I.    Introduction**

    Petitioner, Keith J. Canfield, is a former Pennsylvania state prisoner[1] who is

proceeding *pro se* with an application for writ of habeas corpus under 28 U.S.C. §

2254.[2]  (Doc. 1, Pet.)  Mr. Canfield argues that his Susquehanna County Court of

Common Pleas convictions for burglary and theft by unlawful taking should be

vacated due to violations of his right to due process at trial, allegedly because there

was insufficient evidence presented to convict him of these crimes.  Mr. Canfield

presented this argument to the trial court, and later to the Pennsylvania Superior

---

    [1]  Mr. Canfield was released from the Pennsylvania Department of Corrections.
(Doc. 17.)  According to Vinelink (https://www.vinelink.com/vinelink), Mr. Canfield is
currently incarcerated at the Susquehanna County Jail, in Montrose, Pennsylvania.

    [2]  For the convenience of the reader of this document in electronic format, hyperlinks
to authority cited herein have been inserted.  The Court accepts no responsibility for, and
does not endorse, any product, organization, or content any hyperlinked site, or at any site
to which that site might be linked.  The Court accepts no responsibility for the availability or
functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the
user to some other site does not affect the opinion of this Court.

Court, both of which upheld the convictions. Like those courts, this Court finds no constitutional infirmity with Mr. Canfield's convictions. For the reasons discussed below, the petition for habeas relief will be denied as well as a certificate of appealability.

## II.     Background

### A.     Factual Proceedings

On January 13, 2005, the residence of Mary Jane Koes, in Harford Township, Susquehanna County, was burglarized. (Doc. 13-2, Police Criminal Complaint.) Numerous items were taken from the home, including two class rings and a wedding band. (*Id*.) Six days later, on January 19, 2005, the Pennsylvania State Police (PSP) recovered the three stolen rings in a pawn shop in Binghamton, New York. (*Id*.) Through the owner of the pawn shop, the PSP were able to verify that the rings had been sold by Mr. Canfield for $48. (*Id*.) The PSP arrested Mr. Canfield, locating him in close proximity to the burglarized residence, and verified that he was both working and living in close proximity to the burglarized residence at the time of the crime. (*Id.*)

During an interview with the PSP, Mr. Canfield provided several different and mutually inconsistent accounts of how he came into possession of the purloined jewelry. *See*, *infra*. By way of example, Mr. Canfield admitted to selling the rings, but contended that he received them from a third party while he was at a business known as Gary's-U-Pull-It in New York. Petitioner would not reveal or disclose the

-2-

identity of the third party (*Id*.), but did admit that he knew the rings were stolen.  (*Id*.)

Mr. Canfield was arrested for burglary and theft, and, after his preliminary

arraignment, bail was set at $50,000.  (Doc. 13-2, Bail Information Sheet.)

On July 18, 2005, the trial court scheduled jury selection in Mr. Canfield's

case for September 6, 2005.  (Doc. 13-7, Scheduling Order.)  On the day of trial, Mr.

Canfield entered a *nolo contendere* plea to one count of Burglary, with an

agreement that the remaining count (theft by unlawful taking) would be *nolle*

*prosequi* and that he would receive a sentence of 5 years probation to run

consecutive to any other sentence he was serving.  (Doc. 13-8, Plea Agreement;

*see also* Doc. 13-9, Guilty Plea Hearing Transcript.)  Mr. Canfield's sentencing was

set for September 22, 2005.  (Doc. 13-10, Scheduling Order.)  Subsequently, at the

request of counsel, Mr. Canfield's sentencing was continued to October 20, 2005.

(Doc. 13-11, Scheduling Order.)  On October 18, 2005, two days before his

sentencing proceeding, Mr. Canfield filed a petition to withdraw his guilty plea.  (Doc.

13-12. Pet. to Withdraw Guilty Plea.)  On November 16, 2005, Mr. Canfield was

granted leave to withdraw his *nolo contendere* plea, and his trial was scheduled for

January 9, 2006.  (Doc. 13-16, Order and Doc. 13-17, Scheduling Order.)  On

January 5, 2006, Petitioner's counsel filed a motion to continue jury selection.  (Doc.

13-18, Request for Continuance.)  The trial was rescheduled for April 3, 2006.  (Doc.

13-22, Order.)  Mr. Canfield's counsel also filed a motion to compel discovery of

certain PSP maps, as well as a motion *in limine* to exclude the introduction of any of

Mr. Canfield's prior bad acts.  (Doc. 13-19, Mot. in Limine, and Doc. 13-20, Mot. to

Compel.)  After holding a hearing on these matters, the trial court ordered the Commonwealth to produce certain maps to the defense, but also restricted the defense's use of said maps.  (Doc. 13-22, Order.)  At the same time, the trial court held in abeyance the motion *in limine* relating to Mr. Canfield's prior bad acts.  (*Id*.)

On April 3, 2006, the day of jury selection, Mr. Canfield entered into a written waiver of his right to a jury trial.  (Doc. 13-26, Waiver of Jury Trial.)  A bench trial was scheduled for the following day (Doc. 13-27, Order), and Mr. Canfield's motion *in limine* was denied.  (Doc. 13-27, Order.)

At trial, the Commonwealth presented a number of witnesses.  First, Mary Jane Koes testified that her residence was located in Harford Township, Susquehanna County, and described how someone broke into her home.  (Doc. 13-29, Vol. I, Jury Trial Transcript, ECF pp. 10-11.)  She testified that jewelry had been taken, and was able to specifically identify three rings that the PSP had recovered in New York State.  (*Id*., ECF pp. 27-32.)  The owner of the New York pawn shop was able to produce pawn shop records demonstrating that Mr. Canfield had sold the rings.  (*Id*., ECF pp. 46-47.)

PSP Trooper Deck testified that when he recovered the rings from the New York pawn shop, he was told that Mr. Canfield had sold the rings.  (*Id*., ECF pp. 71-72.)  Trooper Deck testified that he had investigated other robberies committed by Mr. Canfield in the past, and that the burglary scene was similar to Mr. Canfield's previous burglaries.  (*Id*., ECF pp. 60-66.)  Trooper Deck also testified that Mr. Canfield confessed to possessing the rings, knowing they were stolen, and selling

them to the pawn shop in New York. (*Id.*, ECF pp. 75-78.) In addition, Trooper Deck testified that he was able to place Mr. Canfield near the scene of the burglary during the time period in question. (Doc. 13-30, ECF pp. 11-12.)

The trial court also heard testimony concerning a series of inconsistent, and occasionally inculpatory, statements made by Mr. Canfield. In the course of an interview with Trooper Deck, Mr. Canfield initially denied any knowledge of the burglary and did not provide any information until he was confronted with the fact that the rings had been recovered from a pawn shop in New York. (Doc. 13-29, ECF pp. 74-75; Doc. 13-31, ECF p. 7.) At first, Mr. Canfield would not tell Trooper Deck where he got the stolen rings but then indicated he got them from someone he saw and met everyday at Gary's U-Pull-It. (Doc. 13-29, ECF pp. 76-77; Doc. 13-31, ECF p. 8.) When questioned further, Mr. Canfield clearly acknowledged consciousness of guilt, stating: "I can't tell you because I could be looking at 3 ½ to 7 years." (Doc. 13-29, ECF pp. 77.) Upon being pressed on this statement, Mr. Canfield replied: "I'm not going to open up a big can of worms and tell you." (*Id.*, ECF p. 78.) Trooper Deck then specifically asked Mr. Canfield questions regarding another person of interest in other burglaries, John Wandall. (*Id.*, ECF p. 90.) Mr. Canfield stated he had not seen John Wandall in some time. (*Id.*; Doc. 13-31, ECF p. 9.)

During his transport to his preliminary hearing, Mr. Canfield told Trooper Rebecca Warner that he received the rings from "a dead guy." (Doc. 13-31, ECF p. 10.) At this point, Mr. Canfield advised that he met John Wandall at an adult bookstore in Binghamton, New York, and was asked by Wandall to get rid of the

-5-

rings because he did not have a driver's license necessary to provide the pawn shop as identification. (*Id.*, ECF p. 13-14.) Mr. Canfield admitted he "probably knew the rings were stolen." (*Id.*, ECF p. 14.) He stated he received $18 of the $48 he received for the rings, and that Wandall kept the rest. (*Id.*)

While at the Susquehanna County Correctional Facility awaiting trial, Mr. Canfield requested to see a member of the PSP regarding information he had regarding other on-going investigations in the county. (Doc. 13-30, ECF p. 39.) Trooper William Strong went to the facility to interview Mr. Canfield. (*Id.*) At this point, Mr. Canfield provided a third account of his role in the theft at the Koes' residence. (*Id.*, ECF p. 40.) Mr. Canfield told Trooper Strong he purchased three rings from an individual on the street in Broome County, New York. (*Id.*, ECF p. 40.) He reported the three rings were in a glass jar which contained a lot of other rings, and that he randomly picked those three rings out of the jar, then sold them. (*Id.*)

Based upon this evidence, the trial court convicted Mr. Canfield of burglary[3] and theft by unlawful taking.[4] (Doc. 13-33, Verdict.) On May 25, 2006, moments prior to his sentencing, Mr. Canfield obtained private counsel, and moved to continue his sentencing, which the lower court denied. (Doc. 13-40, Entry of Appearance; Doc. 13-42, Order.) The trial court sentenced Mr. Canfield to a period of incarceration of 3 years to 6 years followed by 12 years probation. (Doc. 13-43, State Sentence; Doc. 13-44, State Sentence.)

---

[3] *See* 18 Pa. Code § 3502(a).

[4] *See* 18 Pa. Code § 3921(a).

B.    *Post-Sentence Proceedings*

On June 8, 2006, Mr. Canfield, through new private counsel, filed a "motion for arrest of judgment" and a motion to reconsider sentence.  (Doc. 13-45, Mot. for Arrest of Judgment; Doc. 13-46, Mot. for Recons. of Sentence.)  The trial court held a hearing on both motions.  (Doc. 13-51, Tr. Post Sentence Mot. Hr'g.)  At the hearing, Mr. Canfield's original trial counsel, Attorney Hollister, testified in response to Mr. Canfield's assertion that he had provided ineffective assistance of counsel.  (*Id*.)  Moreover, the Commonwealth called Mr. Canfield's purported witness, Bertie Lacount, whom Petitioner contended was with him when the rings were obtained from another person.  (*Id*., ECF pp. 3-4.)  Mr. Lacount testified that he drove to New York State with Mr. Canfield, went first to Gary's U-Pull-It, and then accompanied Mr. Canfield on errands in the area, including a stop at a pawn shop.  (*Id*., ECF pp. 7-8.)  Mr. Lacount testified he did not accompany Mr. Canfield into the pawn shop, he did not meet a third individual that day, and that Mr. Canfield did not drive off with any other individual that day.  (*Id*., ECF pp. 8-9.)

The trial court denied Mr. Canfield's post-trial motions.  (Doc. 13-52, Op. and Order.)  In its opinion, the trial court stated the following:

> Defendant calls into question the sufficiency of the evidence to convict him of the crimes of burglary and theft by unlawful taking. ... In the instant matter, the Commonwealth produced testimony and evidence that victim, Mary Jane Koes, not having given Defendant Canfield permission to enter her home, returned to her home on January 13, 2005, from a hair appointment to find the basement door and jam broken.  She also found that jewelry — in the form of three rings and gold chains — and a camera had been taken from her bedroom during the intrusion.  She identified the same rings at trial from

evidence of the Pennsylvania State Police. These rings were recovered by Trooper Deck on January 19, 2005, at a pawn shop called Buyer's Unlimited in Binghamton, New York. The admitted copy of the receipt of the Buyer's Unlimited depicts the subject three rings by a photocopy of the receipt dated 1/14/05, the day after the burglary, and shows Keith J. Canfield as the seller was paid an amount of $48.00 The Commonwealth's Exhibit 2 shows a check stub record of Buyer's Unlimited paying Keith J. Canfield $48.00 for metal. Convictions of Keith J. Canfield for other burglaries in the past showed a similar patter of breaking in or going into a residence and going directly to a master bedroom and taking jewelry therefrom and later disposing of the jewelry and/or other goods at pawn shops.

Moreover, when cross examined, Keith J. Canfield admitted to possessing and selling the rings in New York state at Buyer's Unlimited for the sum of $48.00.

We found the Commonwealth's evidence and testimony to be credible and sufficient to prove Defendant Canfield guilty beyond a reasonable doubt of burglary and theft by unlawful taking.

On the other hand, we found Defendant Canfield's testimony as to not being involved in the alleged burglary and theft by unlawful taking to be incredible. His statement of being a straight shooter was patently incredulous. His statements to the investigating state police were inconsistent. Not only that but he was aware of and stated to investigators that telling them some things could land him back in prison for a set number of years — 3 ½ to 7 years. Despite being accused of serious matters, he never mentioned the possibility of John Wandall being the culprit until John Wandall had died. And unlike Keith J. Canfield whose location of residence and employment was within three — four miles of Mary Jane Koe's residence, no evidence or testimony placed John Wandall in the area of Mary Jane Koes' residence at any time.

(*Id.*, ECF pp. 14-16.) With respect to Mr. Canfield's claim that he received ineffective counsel at trial, the trial court held that "trial counsel was not ineffective."

(*Id.*, ECF p. 16.)

-8-

[Trial counsel] was not directed by Defendant Canfield to file an alibi defense despite having discussed the matter with Canfield. He did not call Pennsylvania State Troopers as witnesses since he was convinced that would not support Canfield's contention that he was a straight shooter. Trooper Deck confirmed Attorney Hollister's hesitations to call troopers by refuting Canfield's contention. Bertie LaCount, who could have been called, fully disputed Canfield's claim that another — Wandall — brought the rings to Canfield and then would have been the burglary of Mary Jane Koes residence on January 13, 2005.

We have no testimony by Canfield, or any other person appearing on his behalf, that any certain named witnesses would have given specific testimony to dispute the Commonwealth's witnesses trial testimony or specific testimony upon which the court would be included to sentence Defendant Canfield to a lesser period of incarceration.

(*Id.*, ECF pp. 16-17.)

No direct appeal was filed to the Pennsylvania Superior Court.


C.    *PCRA Proceedings*

On November 26, 2006, Mr. Canfield filed a *pro se* petition for relief under the Pennsylvania Post Conviction Relief Act (PCRA), 42 PA. CON. STAT. ANN. §§ 9541 *et seq.* (Doc. 13-53, PCRA Pet.) The PCRA court appointed counsel on December 1, 2006. (Doc. 13-54, Order.) In his petition, Mr. Canfield Susquehanna County lacked jurisdiction and venue over the matter, insufficiency of evidence to support his convictions, and ineffective assistance of counsel related to the failure to subpoena witnesses and use prior inconsistent statements by the arresting officer. The Commonwealth sought to dismiss the PCRA petition as it raised issues

previously litigated in the post-sentence proceedings.  (Doc. 13-55, Mot. to Dismiss

PCRA Pet.)  The PCRA court agreed and dismissed the PCRA petition.  (Doc. 13-

56, Order Notice of Pending Dismissal; Doc. 13-59, Op. and Order.)

On July 23, 2007, Mr. Canfield filed an appeal of the dismissal of his PCRA

petition to the Pennsylvania Superior Court.  (Doc. 13-64, Notice of Appeal.)  On

June 27, 2008, in affirming the PCRA court, the Pennsylvania Superior Court stated:

> After reviewing the entire record, which includes transcripts
> of both trial and post-sentence hearing, along with the trial
> court's extensive and comprehensive opinion of September
> 25, 2006 rejecting the very issues now underlying the
> claims raised before us, we discern no arguable merit to
> Appellant's appeal.  Neither of the four issues listed in the
> *Turner/Finley* brief nor the derivative ineffective assistance
> of counsel claims now offered by Appellant in response to
> counsel's petition to withdraw is supported by the record.
> Indeed, the evidence properly admitted at trial
> overwhelmingly implicated [Mr. Canfield] in crimes
> committed in Susquehanna County, Pennsylvania.
> Accordingly, relying on the trial court's consecutive opinions
> dated 9/25/06 and 1/9/07 respectively, we affirm and grant
> counsel's petition to withdraw.

(Doc. 13-67, Order, ECF p. 6.)


*D.      Federal Habeas Corpus Proceedings*.

Mr. Canfield raises three claims for relief in his federal habeas corpus petition:

(1) there was insufficient evidence to convict him; (2) trial counsel's ineffective

assistance of counsel; and (3) there was no jurisdiction or venue in Susquehanna

County.  (Doc. 1, Habeas Pet.)

In accordance with *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999) and

*Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000), the Court issued formal notice to Mr.

Canfield that he could either have the petition ruled on as filed, that is, as a § 2254 petition for writ of habeas corpus and heard as such, but lose his ability to file a second or successive petition, absent certification by the court of appeals, or withdraw his petition and file one all-inclusive § 2254 petition within the one-year statutory period prescribed by the Antiterrorism Effective Death Penalty Act (AEDPA). (*See* Doc. 4.) Mr. Canfield was advised that if he did not return his Notice of Election form, the Court would rule on his current petition for writ of habeas corpus as filed. (*Id*., ECF p. 3.) After the requisite time had passed without Mr. Canfield filing a Notice of Election form, the Court issued a Show Cause Order. (*See* Doc. 5.) The District Attorney of Susquehanna County filed a timely response to the petition. (*See* Docs. 9, 10, 11 and 13.) Mr. Canfield filed a timely Traverse. (*See* Doc. 16.)

## III.    Standard of Review

As Mr. Canfield's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996); *Lindh v. Murphy*, 521 U.S. 320, 326-27, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997); *Wilson v. Beard*, 589 F.3d 651, 657 (3d Cir. 2009). Under AEDPA, the standard of review applicable to a particular claim depends on how that claim was resolved by the state courts.[5]

---

[5] Under 2254(d)(1), habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. In this case because the claims presented in Mr. Canfield's instant petition have been exhausted in the state courts, the Court will proceed with a merits discussion.

*Breakiron v. Horn*, 642 F.3d 126, 131-32 (3d Cir. 2011). If an exhausted claim has not been adjudicated by the state courts, then *de novo* review applies. *Id*. at 131 (citing *Porter v. McCollum*, 558 U.S. 30, ___, 130 S.Ct. 447, 452, 175 L.Ed.2d 398 (2009)). If, however, the state court has adjudicated the claim on the merits,[6] the Court may grant relief only if the state court's determination "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).[7]

The "contrary to" and "unreasonable application" clauses of § 2254 have independent meaning. *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002). A state court judgment is "contrary to" federal law when it is "diametrically different, opposite in character or nature, or mutually opposed" to "clearly

_____

[6] "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, ____ U.S. ____, ____, 131 S.Ct. 770, 784-85, 178 L.Ed.2d 624 (2011).

[7] Section 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

established" decisions of the United States Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000). This may occur if "the state court ignores or misapprehends clear precedent or it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.' " *Wilkerson v. Klem*, 412 F.3d 449, 452 (3d Cir. 2005) (quoting *Williams*, 529 U.S. at 406, 120 S. Ct. at 1520). Alternatively, a state court judgment is an "unreasonable application" of federal law if it chose the correct rule of law based on the facts, but applied the rule in an "objectively unreasonable way." *Id.* "A court that unreasonably extends an established rule to a new context where it should not apply or ... unreasonably fails to extend such a rule to a new context where it should apply" may have unreasonably applied the correct rule of law. *Id*. (citing *Williams*, 529 U.S. at 407, 120 S.Ct. at 1520).

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, § 2254(d)(1)'s "clearly established Federal law" signifies the holdings, not the dicta, of Supreme Court decisions. *Howes v. Fields*, ____ U.S. ____, ____, 132 S.Ct. 1181, 1187, 182 L.Ed.2d 17 (2012). Specifically, only Supreme Court law established at the time of the state court's decision can be a basis for habeas relief under the AEDPA. *See Green v. Fisher*, ____ U.S. ___, ___,132 S.Ct. 38, 44, 181 L.Ed.2d 336 (2011) ("§ 2254(d)(1) requires federal courts to 'focu[s] on what a state court knew and did,' and to measure state-court decisions 'against this Court's precedents *as of 'the time the state court*

*renders its decision.'"*)(quoting *Cullen v. Pinholster*, 563 U.S.____,

____, 131 S.Ct. 1388, 1399, 179 L.Ed.2d 557 (2011)*(emphasis added)).  Therefore,

federal habeas review "is limited to the record that was before the state court that

adjudicated the claim on the merits".  *Cullen*, 563 U.S. at ____, 131 S.Ct. at 1398.

Finally, "under the AEDPA standard, the '[s]tate court[s'] relevant factual determinations

are presumed to be correct unless the petitioner rebuts [that] presumption by clear and

convincing evidence.'" *McBride v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 101 (3d

Cir. 2012)(quoting *Han Tak Lee v. Glunt*, 667 F.3d 397, 403 (3d Cir. 2012))(citing 28

U.S.C. § 2254(e)(1)).

        Turning to § 2254(d)(2), the test for the "unreasonable determination of facts"

clause is whether the petitioner has demonstrated by "clear and convincing evidence,"

§ 2254(e)(1), that the state court's determination of the facts was unreasonable in light

of the record.  *Rountree v. Balicki*, 640 F.3d 530, 537 (3d Cir. 2011) (citing *Rice v.*

*Collins*, 546 U.S. 333, 338-339, 126 S. Ct. 969, 163 L.Ed. 2d 824 (2006) ("State-court

factual findings, moreover, are presumed correct; the petitioner has the burden of

rebutting the presumption by 'clear and convincing evidence.' § 2254(e)(1).")(citing

*Miller-El v. Dretke*, 545 U.S. 231, 240, 125 S. Ct. 2317, 2325, 162 L.Ed. 2d 196 (2005));

*see also Simmons v. Beard*, 590 F.3d 223, 231 (3d. Cir. 2009) ("Under the § 2254

standard, a district court is bound to presume that the state court's factual findings are

correct, with the burden on the petitioner to rebut those findings by clear and convincing

evidence.").  Further, as with § 2254(d)(1), the evidence against which a federal court

measures the reasonableness of the state court's factual findings is the record

evidence at the time of the state court's adjudication.  Rountree, 640 F.3d at 538 (citing *Cullen*, ___ U.S. at ___, 131 S. Ct. at 1401-03).

"If this standard is difficult to meet, that is because it was meant to be." *Richter*, ___ U.S. at ___, 131 S.Ct. at 786.  Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." *Id.*  Further, it was designed to be difficult in order "to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez v. Ryan*, ___ U.S. ___, ___, 132 S.Ct. 1309, 1316, 182 L.Ed.2d 272 (2012).

## IV.    Discussion

### A.    *Mr. Canfield's Sufficiency of the Evidence Claims.*

In this case, Mr. Canfield attacks his conviction arguing that the evidence was insufficient to establish his guilt beyond a reasonable doubt.  He was convicted of burglary and theft by unlawful taking.  Under Pennsylvania law, "a person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein unless the premises are at the time open to the public or the actor is licensed or privileged to enter." 18 PA. CONS. STAT. ANN. § 3502(a).  As to the theft offense, "a person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 PA. CONS. STAT. ANN. § 3921(a).

-15-

Essentially, Mr. Canfield claims that the state courts unreasonably applied the principles established in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) to the facts of his case. In short, these cases make clear that an accused must be afforded due process under the Fourteenth Amendment to the United States Constitution, and that as part of this due process the evidence used to convict an accused of a particular crime must be sufficient to prove beyond a reasonable doubt that the accused committed the crime charged. *Jackson*, 443 U.S. at 316, 99 S.Ct. at 2787; *In re Winship*, 397 U.S. at 364, 90 S.Ct. at 1072-73; *see also Fiore v. White*, 531 U.S. 225, 228-29, 121 S.Ct. 712, 714, 148 L.Ed.2d 629 (2001) (*per curiam*) ("We have held that the Due Process Clause of the Fourteenth Amendment forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt."). On habeas review, sufficiency of the evidence claims must be assessed with explicit reference to the substantive elements of the criminal offense as defined by state law, "but, the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, ____ U.S. ____, ____, 132 S.Ct. 2060, 2064, 182 L.Ed.2d 978 (2012). The task of resolving differences in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts is reserved for the factfinder and is beyond the scope of federal habeas sufficiency review. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *see also Coleman*, _____ U.S. at _____, 132 S.Ct. at 2064 ("*Jackson* leaves juries broad discretion in deciding what inferences to draw from the

evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'")

Judged against this standard, we find as the Pennsylvania courts found, that there was ample evidence to prove Mr. Canfield's guilt beyond a reasonable doubt. That evidence reveals that the burglary in this case was committed in a fashion similar to past burglaries committed by Mr. Canfield, and that Mr. Canfield was placed very near the scene of the crime when the burglary occurred. Shortly after the burglary Mr. Canfield possessed, and pawned, rings that were stolen in the burglary of the Koes' home. When asked why he was in possession of the items that were taken in the burglary, Mr. Canfield provided at least three different and mutually inconsistent accounts. The trial court found that these false exculpatory statements served as compelling evidence of Mr. Canfield's consciousness of guilt. Furthermore, Mr. Canfield made direct admissions of consciousness of guilt to police, stating, "I can't tell you [more] because I could be looking at 3 ½ to 7 years." Upon being pressed on this statement, Mr. Canfield replied: "I'm not going to open up a big can of worms and tell you." Thus, the evidence, as well as Mr. Canfield's own admissions, presented a compelling mosaic of proof tying him to this crime. We, therefore, conclude that "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 318-19, 99 S.Ct. at 2788-89. Accordingly, Mr. Canfield's collateral attack on the sufficiency of the evidence in this case fails.

*B.*    *Alleged Ineffectiveness of Mr. Canfield's Trial Counsel.*

The Sixth Amendment guarantees an accused in a criminal prosecution the right to assistance of counsel for his defense. U.S. Const. amend. VI. Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 446 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Generally, to prevail on a claim alleging ineffective assistance of counsel, "a defendant must show both deficient performance by counsel and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251 (2009). Deficient performance is defined as representation that falls below an objective standard of reasonableness measured "under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065. Trial counsel are "strongly presumed to have rendered adequate assistance," and should not have a reviewing court "second-guess counsel's assistance." *Cullen*, 563 U.S. at ____, 131 S.Ct. at 1403. The prejudice prong requires a petitioner to show "that there was a reasonable probability but for counsel's error, 'the result of the proceeding would have been different.'" *McBride*, 687 F.3d at 102 n. 11 (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064). A petitioner must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter,* ____ U.S. at ____, 131 S.Ct. at 786. A district court's review of the state court's application of *Strickland* for

reasonableness, "is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles,* 556 U.S. at 123, 129 S.Ct. at 1420.

In his petition, Mr. Canfield attacks the effectiveness of his trial counsel, arguing in a summary fashion that counsel failed to adequately investigate his case, neglected to file pre-trial motions, and labored under a conflict of interest because he could have been a potential witness in the case to refute the arresting officer's statement that he had never contacted Mr. Canfield's cousin during his investigation of the burglary. (Doc. 16, Traverse). The state courts considered these ineffectiveness claims and rejected them, concluding that they were not "supported by any evidence of record." (Doc. 13-67, Order, ECF p. 6.)

Based on a review of the trial transcripts in this matter as well as the transcript of the post sentence motion hearing which specifically addressed Mr. Canfield's ineffectiveness claims, we find that the state court's finding that counsel's performance was not deficient was not an unreasonable application of *Strickland*. § 2254(d)(1). Further, as the state courts observed, there is no evidence to support Mr. Canfield's claims of ineffectiveness by his trial counsel. § 2254(d)(2). Quite to the contrary, substantial evidence contradicts those claims. Mr. Canfield alleges that his counsel neglected to file pre-trial motions or investigate his case; however, the state court proceedings reveal that counsel did engage in pre-trial motions practice, and affirmatively sought discovery and information regarding the case, conducting a through and proper investigation into this matter which included interviewing potential

-19-

witnesses.  Trial counsel's decision not to call various law enforcement officers who knew Mr. Canfield as a "straight shooter" who took responsibility for his prior criminal activities was a strategic decision based on the impact such testimony would have on his client's credibility and his lack of confidence that the officers would testify as Mr. Canfield expected.  Additionally, Mr. Canfield specifically directed his trial counsel not to call Bertie LaCount, as witness at trial.  At the post sentence motion hearing, Mr. LaCount did testify and fully disputed Mr. Canfield's claim that another person (Mr. Wandall) gave him the rings to pawn.  Accordingly, the trial court's decision that trial counsel's actions and decisions were reasonable and did not amount to deficient performance was not an unreasonable application of *Strickland*.  The record in this case confirms that Mr. Canfield's conviction was not a product of ineffective counsel but rather is the direct result of the compelling evidence establishing his guilt, guilt that Mr. Canfield himself foreshadowed when he confessed early on to police that "I could be looking at 3 ½ to 7 years."  Therefore, Mr. Canfield is not entitled to habeas corpus relief on his claim of ineffective trial counsel.

> ### C.  The Court of Common Pleas of Susquehanna County had Proper Jurisdiction and Venue to Try Mr. Canfield.

The Constitution of the Commonwealth of Pennsylvania provides for a "unified" judicial system in which the state courts of common pleas have jurisdiction over all state criminal matters.  *See* Pa. Const. art. V, § 5.  "Controversies arising out of violations of the Crimes Code are entrusted to the original jurisdiction of the courts of common pleas for resolution."  *Commonwealth v. Bethea*, 574 Pa. 100, 113, 828 A.2d 1066, 1074

(2003); *see* 18 PA. CONS. STAT. ANN. § 102; 42 PA. CONS. STAT. ANN. § 931. "Generally, venue begins in the court with a geographic connection to the events at issue." *Bethea*, 574 Pa. 114, 828 A.2d. 1075. Generally, "[v]enue in a criminal action properly belongs in the place where the crime occurred. This practice recognizes the necessity of bringing a party to answer for his actions in the place where the crime itself occurred because that is where the evidence and the witnesses will most likely be located." *Id.* "While the Commonwealth bears the burden of proving facts sufficient to establish jurisdiction, it may rely upon circumstantial evidence to meet its burden." *Commonwealth v. Bradfield*, 352 Pa. Super. 466, 473, 508 A.2d 568, 571 (1986).

Mr. Canfield alleges that the trial court, the Court of Common Pleas of Susquehanna County, lacked jurisdiction and venue to try him for the burglary and theft since he was arrested on charges of burglary and theft based on his selling of stolen property in New York State. (Doc. 1, Pet.) This issue was presented to the state courts and quickly disposed of because "the evidence properly admitted at trial overwhelmingly implicated [Mr. Canfield] in crimes committed in Susquehanna County, Pennsylvania." (Doc. 13-67 at ECF p. 6.) Based on the evidence of the record, we do not find this determination to be unreasonable based on the fact that the rings Mr. Canfield admits to pawning in New York State were positively identified as those taken during the robbery of the Keos' home which is located in Susquehanna County, Pennsylvania. Accordingly, subject matter jurisdiction was proper in the Court of Common Pleas for Susquehanna County. Mr. Canfield's final claim for habeas relief is denied.

**V.     Conclusion**

The Court will issue an order denying the section 2254 petition.  The order will also deny a certificate of appealability, based on the analysis in this memorandum. However, Mr. Canfield is advised that he has the right for thirty (30) days to appeal our order denying his 2254 petition, *see* 28 U.S.C. § 2253(a); Fed. R. App. P. 4(a)(1)(A), and that our denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks a certificate of appealability from the Third Circuit Court of Appeals.  *See* Fed. R. App. P. 22; Local Rule of App. P. 22.1.


                                        **/s/ A. Richard Caputo**
                                        **A. RICHARD CAPUTO**
                                        **United States District Judge**

**Date:  October 23, 2012**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

KEITH J. CANFIELD,     :
            :
  Petitioner      :
            :  **CIVIL NO. 3:CV-09-1053**
 v.          :
            :  **(Judge Caputo)**
MICHAEL KLOPOTOSKI, *et al.*, :
            :
  Respondents    :

# O R D E R

**AND NOW**, this **23rd** day of **OCTOBER, 2012,** it is **ORDERED** that:

1. Mr. Canfield's Petition for Writ of Habeas Corpus under
  28 U.S.C. § 2254 (Doc. 1) is **DENIED**.

2. A certificate of appealability is **DENIED**.

3. The Clerk of Court shall close this file.


        /s/ A. Richard Caputo
        **A. RICHARD CAPUTO**
        **United States District Judge**